UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:22-cv-00236

———

**Ricky Allen Frosch,**
*Plaintiff,*

v.

**Colton Alsobrook et al.,**
*Defendants.*

———

# OPINION AND ORDER

Plaintiff Ricky Allen Frosch filed this action pursuant to 42 U.S.C. § 1983. The case was referred to United States Magistrate Judge K. Nicole Mitchell pursuant to 28 U.S.C. § 636(b). Doc. 3.

The magistrate judge issued a report recommending that defendants' motion for summary judgment on qualified immunity grounds be granted in part and denied in part. Doc. 109. Specifically, the magistrate judge recommended the motion be granted as to plaintiff's deprivation-of-human-needs claims but denied as to his excessive-force claim. *Id.* at 43. Both plaintiff and defendants timely filed written objections to the report. Docs. 113, 114.

The court reviews the objected-to portions of the magistrate judge's report and recommendation de novo. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). An objection must identify the specific finding or recommendation to which the party objects. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). "Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

The court first rules on defendant Alsobrook's objections and then on plaintiff's objections.

## I.  Defendant Alsobrook's objections

### A.  Sham-affidavit doctrine

Defendant Colton Alsobrook contends that the magistrate judge erred in finding there is a genuine issue of material fact as to plaintiff's excessive-force claim because he relied on inadmissible evidence. Doc. 114 at 2. The evidence to which Alsobrook objects is a declaration that plaintiff attached to his response to defendants' motion for summary judgment. *Id.* In that declaration, plaintiff testified that he complied with Alsobrook's instructions and did not make any threats at the Henderson County Jail. Doc. 82-2. Alsobrook, in contrast, testified at his deposition that plaintiff refused to comply with orders and threatened to kill officers. Doc. 75-1 at 10–12, 14. According to Alsobrook, plaintiff's behavior required him to use force to gain plaintiff's compliance. *Id.* at 14. The magistrate judge concluded that plaintiff's declaration is not barred by the sham-affidavit doctrine and found that the declaration created a fact issue as to whether Alsobrook's use of force was reasonable. Doc. 109 at 7, 22–23. Alsobrook repeats that this is error because plaintiff's declaration is inadmissible under the sham-affidavit doctrine. Doc. 114 at 3.

The purpose of the sham-affidavit doctrine is to prevent a non-moving party from "manufactur[ing] a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). "[T]he bar for applying the [sham-affidavit] doctrine is a high one, typically requiring affidavit testimony that is 'inherently inconsistent' with prior testimony." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (quoting *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019)). Fifth Circuit case law shows that clear conflicts, not just mere informational discrepancies, are needed. *See, e.g.*, *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 458 (5th Cir. 2024) (finding a conflict between a summary judgment affidavit that plaintiff "had conversations . . . regarding . . . pre-Incident conduct" and deposition testimony that "she never reported [the] pre-Incident

conduct"); *Turner v. Wal-Mart La., L.L.C.*, No. 22-30647, 2023 WL 4763338, at *2 (5th Cir. July 26, 2023) (finding a conflict between the earlier testimony of "I don't know" whether a wrench was defective and a later affidavit saying "the wrench was 'defective'"). So "the sham-affidavit doctrine is not applicable when discrepancies between an affidavit and other testimony can be reconciled such that the statements are not inherently inconsistent." *Seigler*, 30 F.4th at 477 (citing *Winzer*, 916 F.3d at 472–73).

According to Alsobrook, plaintiff's declaration is inherently inconsistent with earlier deposition testimony in which plaintiff (1) admitted to making threats and (2) said he did not remember what he said at the jail before Alsobrook's use of force. Doc. 84 at 3.

For the first alleged discrepancy, plaintiff's declaration can be reconciled with his previous testimony. Plaintiff admitted in his deposition to making threats only *while he was being transported* to the jail. Doc. 75-3 at 16. In his declaration, in contrast, plaintiff denied making any threats while he was *at* the jail. Doc. 82-2 ¶ 5. As the magistrate judge concluded, those two statements can be reconciled such that they are not inherently inconsistent.

With respect to the second discrepancy, plaintiff's declaration can again be reconciled with his previous testimony. Plaintiff argues that his earlier testimony about not remembering what he was saying related to only two brief moments at the jail. The first was the moment immediately before plaintiff was placed against the wall. Doc. 75-3 at 23–24. The other was the brief period while he was exiting the transport vehicle. Doc. 82-4 at 5. According to plaintiff, the fact that he does not remember what was being said at these exact moments does not mean that he has no memory of what was said at the jail. Doc. 87 at 4. Plaintiff points out that he testified in his deposition about at least one statement he made at the jail. *Id.* The magistrate judge also noted that other portions of plaintiff's testimony support his declaration. Doc. 109 at 7. The court agrees with the magistrate judge's finding that plaintiff's declaration can be reconciled with his prior testimony because it

"constitutes a more expansive statement that clarifies, rather than conflicts with, prior testimony." Doc. 109 at 6. Therefore, the court accepts the magistrate judge's conclusion that the sham-affidavit doctrine does not bar the affidavit.

### B. Qualified immunity

Further, defendant Alsobrook also claims that the magistrate judge erred in denying qualified immunity on the excessive-force claim. Doc. 114 at 5. Having decided that plaintiff's affidavit is not barred by the sham-affidavit doctrine, the court uses the facts set forth in that affidavit in its analysis.

On the issue of qualified immunity, two questions exist. First is whether the officer "violated a constitutional right." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). Second is whether the right was "clearly established" at the time of the misconduct. *Id.* The burden is on the plaintiff to "show that the defense is not available." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc).

In addressing the first question and viewing the facts in a light most favorable to the non-movant at the summary judgment stage, the court agrees with the magistrate judge's conclusion that plaintiff's evidence here is sufficient to show a violation of plaintiff's constitutional rights. According to plaintiff's affidavit, he never resisted, threatened, or failed to comply during his booking at the jail. Doc. 82-2 ¶¶ 4–6. But because Alsobrook pushed plaintiff against the wall and onto the floor, plaintiff suffered a laceration to his head and a broken collarbone. Doc. 82-4 at 7–8. Therefore, in reviewing the magistrate judge's conclusion, the court agrees that plaintiff has proffered evidence sufficient, if believed, to show that Alsobrook possibly violated his Fourth Amendment right against excessive force. *See Curran v. Aleshire*, 800 F.3d 656, 661–62 (5th Cir. 2015) (finding a violation of plaintiff's Fourth Amendment right against excessive force existed when an officer "slammed [plaintiff's] head into a wall" where there was "a genuine dispute regarding whether [plaintiff] was resisting at the time"). And it is the Fourth Amendment's excessive-force

prohibition, not that of the Fourteenth Amendment, that applies to claims of excessive force before the booking process is completed.[1]

For the second question, the court similarly agrees with the magistrate judge's conclusion—a constitutional violation of the kind that plaintiff alleges is objectively unreasonable in light of clearly established law. For example, in *Bush v. Strain*, the Fifth Circuit held that "the test is clear enough" that the defendant "should have known that he could not forcefully slam [the plaintiff's] face into a vehicle while she was restrained and subdued." 513 F.3d 492, 502 (5th Cir. 2008). And in *Curran*, the Fifth Circuit found no legal error in the district court's conclusion that "slamming a student's head into the wall after her resistance had ceased" violated clearly established law, even when the student battered an officer just minutes before. 800 F.3d at 663. When an officer realizes that the arrestee is no longer resisting, the *Graham* factors give "fair warning" that a use of heightened force violates a constitutional right. *Id.* at 661. Here, taking the facts as plaintiff has offered them, fair warning existed; defendant Alsobrook, by allegedly mashing a compliant defendant's head against the wall, would be violating a clearly established right. *See* Doc. 82-4 at 7.

It is not the court's role at the summary-judgment stage to assess the credibility of plaintiff's affidavit. *See Seigler*, 30 F.4th at 476. Rather, the court's role is simply to determine whether, in viewing the evidence in the light most favorable to the non-movant, a reasonable jury could find in favor of that party. *Id.* Here, if a jury credits plaintiff's testimony consistent with his affidavit, the jury could find that Alsobrook's use of force was unreasonable. Therefore, the court agrees with the magistrate judge's conclusion that defendant Alsobrook is not entitled to qualified

---

[1] *See, e.g.*, *Alanis v. City of Brownsville*, No. 1:16-cv-00190, 2018 WL 11183788, at *6 (S.D. Tex. June 7, 2018) (holding that "when the book-in process is incomplete . . . the Fourth Amendment is still applicable"), *report and recommendation adopted*, No. 1:16-cv-00190, 2018 WL 11183821 (S.D. Tex. July 24, 2018); *Gay v. James*, No. 3:11-cv-02998, 2012 WL 1945618, at *4 (N.D. Tex. May 30, 2012) (holding that the Fourth Amendment applies when the arrestee is "still in the book-in room when the officers took action").

immunity on the excessive-force claims and that defendants' objections to this conclusion are unpersuasive. The court thus accepts the magistrate judge's recommendation that Alsobrook's motion for summary judgment on plaintiff's excessive-force claim be denied.

## II.  Plaintiff's objections

Plaintiff raises several objections to the magistrate judge's recommendation that the court grant defendants' motion for summary judgement on plaintiff's violent-cell claims. Doc. 113. The court finds that plaintiff's objections are without merit.

### A.  Olvera declaration

First, plaintiff objects to the magistrate judge's failure to consider the declaration of Adriane Olvera. Doc. 113 at 2. Olvera's declaration is unrelated to the incident at issue in this case. Instead, it recounts Olvera's own experience in Henderson County's violent cell in 2022. *See* Doc. 82-13. Plaintiff insists Olvera's declaration is not offered as character evidence, but rather as evidence of Henderson County's practice of using the violent cell as punishment. Doc. 113 at 2. Olvera's declaration is inadequate to make such a showing.

It is true that a plaintiff is not required to point to a written policy to hold jail authorities liable for an unlawful practice under § 1983. *Martinez v. Nueces Cnty.*, 71 F.4th 385, 389 (5th Cir. 2023). "In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc)).  "A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to

'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

Here, plaintiff offers Olvera's declaration as his sole example of a prior incident where Henderson County allegedly used the violent cell as punishment. According to Olvera, that incident occurred on May 24, 2022, more than 11 months after plaintiff's arrest. Doc. 82-13 at 1. A single incident 11 months after the events at issue is simply insufficient to establish "a pattern tantamount to official policy." *Peterson*, 588 F.3d at 850. The magistrate judge therefore did not err in refusing to rely on Olvera's testimony.

### B.  Classification of claims

Plaintiff next asserts that the magistrate judge misclassified the violent-cell claims as episodic-acts-or-omissions claims. In plaintiff's view, his violent-cell claims are properly characterized as conditions-of-confinement claims. Doc. 113 at 3–4. Properly classifying a pretrial detainee's claim is crucial because the applicable standard depends on how the claim is classified. *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 463–64 (5th Cir. 2015).

"A 'condition of confinement' case is a 'constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement.'" *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (cleaned up) (quoting *Hare*, 74 F.3d at 644). The challenged conditions may be the result of an express policy or "reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions." *Est. of Henson*, 795 F.3d at 463 (quoting *Sheperd*, 591 F.3d at 452). An episodic-act-or-omission claim, in contrast, is based on "a particular act or omission of one or more officials." *Scott*, 114 F.3d at 53. This kind of claim arises when an actor is "interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.*

Here, plaintiff raises claims based on both express policies and alleged unofficial policies. Plaintiff challenges conditions of the

violent cell that defendants acknowledge are the direct result of official policy. *See* Doc. 75 at 19–21. Plaintiff also alleges that Henderson County maintains an unofficial policy of using the violent cell to punish pretrial detainees. Doc. 30 ¶ 68. However, the evidence precludes plaintiff from prevailing on either of these claims, even if they are properly classified as conditions-of-confinement claims.

On his first argument, plaintiff cannot show that conditions of the violent cell violated the Constitution under the standard for conditions-of-confinement claims. When a pretrial detainee brings a conditions-of-confinement claim, courts in the Fifth Circuit "appl[y] the test established by the Supreme Court in *Bell v. Wolfish*, and ask[] whether the condition is 'reasonably related to a legitimate governmental objective.'" *Est. of Henson*, 795 F.3d at 463 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell*, 441 U.S. at 539.

The evidence demonstrates that the conditions of Henderson County's violent cell are reasonably related to its purported purpose: protecting detainees from the risk of suicide. This is undoubtedly a legitimate goal since "prisons have a constitutional duty to protect their prisoners against their own 'known suicidal impulses.'" *Alexander v. S. Health Partners, Inc.*, No. 3:22-cv-00395, 2024 WL 3240652, at *4 (N.D. Tex. June 28, 2024) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 391 (5th Cir. 1992)). Here, the magistrate judge concluded, and this court agrees, that the conditions of Henderson County's violent cell are reasonably related to the goal of suicide prevention. Doc. 109 at 34. The violent cell's lights are kept on so officers can tell if a detainee is harming himself. *Id.* Detainees are denied objects like toothbrushes, mattresses, pillows, toilets, sinks, and toilet paper because detainees can use such objects to harm themselves. *Id.*

The Northern District of Texas has come to a similar conclusion on the use of "violent cells." *See Alexander*, 2024 WL 3240652 at \*6. There, a pretrial detainee brought a conditions-of-confinement claim based on his five-day stay in Henderson County's violent cell. *Id.* at \*3. Like plaintiff, the detainee in *Alexander* complained that the cell lacked bedding and a toilet and that officers refused to turn off the cell's lights. *Id.* at \*4. The *Alexander* court concluded that these conditions are reasonably related to the legitimate goal of preventing suicide. *Id.* It concluded that a detainee may use a toilet or a sink to try to drown himself. *Id.* (first citing *Belcher v. City of Foley*, 30 F.3d 1390, 1393 (11th Cir. 1994); and then citing *Crocco v. Van Winkler*, No. 1:19-cv-00882, 2023 WL 2349593, at \*2 (D. N.H. Mar. 3, 2023)). It concluded a detainee could use blankets and bedsheets to hang himself. *Id.* (first citing *Flores v. Cnty. of Hardeman*, 124 F.3d 736, 737 (5th Cir. 1997); and then citing *Jacobs v. W. Feliciana Sheriff's Dep't.*, 228 F.3d 388, 391 (5th Cir. 2000)). And it concluded that turning the lights off in the cell may prevent jail officers from preventing a detainee from harming himself. *Id.* (citing *Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 886 (E.D. Wis. 2006)).

Henderson County is entitled to take measures to prevent detainees from committing suicide. Even if plaintiff stated a conditions-of-confinement claim based on the conditions of the violent cell, the claim will not prevail because those conditions are reasonably related to the legitimate goal of suicide prevention.

On his second argument, plaintiff cannot show that Henderson County had an unofficial policy of using the violent cell to punish detainees. The primary evidence plaintiff offers to substantiate this allegation is Adriane Olvera's declaration about her experience in the violent cell. The court has already explained that this declaration is insufficient evidence of an unofficial policy because a single subsequent incident does not establish a pattern of any kind, much less one that "is tantamount to official policy." *Peterson*, 588 F.3d at 850.

Plaintiff also cites deposition testimony from defendant Mickey stating that inmates that are "violent towards other inmates or guards" could be placed in the violent cell "for reasons other than potential self-harm." Doc. 113 at 1–2 (citing Doc. 82-6 at 7). However, for an unstated pattern creating a condition of confinement to "constitute impermissible punishment, the condition must be one that is 'arbitrary or purposeless.'" *Shepherd*, 591 F.3d at 452 (quoting *Bell*, 441 U.S. at 539). Further clarifying defendant Mickey's testimony, defendant Alsobrook, in response to whether violent cells are used for "any other purpose besides suicide watch," noted that brief stays in violent cells are appropriate for violent inmates that have been in physical altercations until they are "able to calm down." Doc. 82-5 at 12–13. He notes that the padding in the cells is helpful if inmates begin to punch walls or attempt to hit their head. *Id.* at 13. Further, inmates with medical needs might make use of the padding if they are regularly falling. *Id.* These justifications continue to show that the alleged use of the violent cells is not "arbitrary or purposeless." *Bell*, 441 U.S. at 520. Therefore, defendant has not highlighted any competent summary judgment evidence to show that a pattern or practice exists that Henderson County officials used a violent cell as *punishment*, even when a violent inmate might not be suicidal. Therefore, plaintiff's conditions-of-confinement claim does not prevail under his second argument.

## C. Nature of the alleged harm

Next, plaintiff objects to the magistrate judge's findings on the nature of the harm he suffered in the violent cell. The magistrate judge concluded that defendants Mickey, Fain, and Johnson—the "central officer defendants"—are entitled to summary judgment on plaintiff's violent-cell claims (hereinafter addressed as episodic-acts-or-omissions claims) because plaintiff failed to identify conditions that presented a substantial risk of serious harm. Doc. 109 at 33–34. With respect to plaintiff's claims against Alsobrook for his confinement in the violent cell, the magistrate judge concluded that Alsobrook is also entitled to summary judgment

because the cell's conditions presented only *de minimis* harms. *Id.* at 42. Plaintiff argues the violent cell's conditions were substantially harmful and not *de minimis*. Doc. 113 at 4, 7.

To prevail on an episodic-acts-or-omissions claim, a plaintiff must show that an "official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650. Deliberate indifference requires a showing that "(1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)). "[T]he question is whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Hare*, 74 F.3d at 645. "Deliberate indifference is an extremely high standard to meet." *Dyer*, 964 F.3d at 380. Absent a showing of a substantial risk of some serious harm that the central officer defendants were aware of, plaintiff cannot prevail on his episodic-acts-or-omissions claims.

Regardless of the nature of a plaintiff's claim, "the Constitution is not concerned with a '*de minimis* level of imposition' on pretrial detainees." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (citing *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996)). Accordingly, the actions and intentions of prison officials are wholly irrelevant when the complained-of conditions are not serious enough give rise to a constitutional violation. *Hamilton*, 74 F.3d at 106. In *Hamilton*, a detainee "allege[d] that he was denied visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period." *Id.* The Fifth Circuit held that "even if [the plaintiff] could show direct evidence that detention facility officials intended to punish him for crimes for which he had not yet been convicted, relief under § 1983 would not be warranted" because the complained-of conditions were *de minimis* impositions. *Id.* Similarly here, even if there are fact issues as to Alsobrook's involvement and intent in placing plaintiff

- 11 -

in the violent cell, summary judgment is still appropriate if plaintiff suffered nothing more than *de minimis* restrictions.

Returning to plaintiff's objections, he complains that the magistrate judge made multiple errors in her analysis of the violent cell's conditions. Doc. 113 at 5. He first asserts that the magistrate judge failed to consider how the conditions of the violent cell interacted with each other and his broken clavicle. *Id.* Yet plaintiff himself does not explain how the conditions of the cell interacted with his broken clavicle to inflict any harm beyond increased discomfort. *See* Doc. 82 at 21. The magistrate judge specifically addressed plaintiff's argument that the conditions of the cell worked together to deprive him of sleep, holding that these conditions "do not rise to the level of a constitutional violation"—and the court agrees. *See* Doc. 109 at 42. Regardless of how "obvious" it might be that plaintiff experienced harm, *see* Doc. 113 at 5–7, it is not apparent that this harm was elevated beyond a *de minimis* harm as interpreted in existing case law.

During his stay in the violent cell, plaintiff was subjected to the same conditions as the plaintiff in *Alexander*. 2024 WL 3240652, at *1. While he was in the violent cell, Alexander had no access to a toilet, toilet paper, or bedding other than a suicide blanket, and "[t]he lights remain[ed] on." *Id.* Alexander remained in the violent cell for five days. *Id.* Plaintiff, however, spent only two days in the violent cell. The only other noteworthy difference is that plaintiff was suffering from a broken clavicle. However, plaintiff has not explained how the cell's conditions interacted with his broken clavicle to inflict any additional serious harm that someone without a broken clavicle would not have suffered. It is difficult to see how plaintiff's experience deprived him of life's minimal necessities when Alexander's did not. Therefore, similarly, this court agrees that "the violent cell's conditions did not deprive [plaintiff] of life's minimal necessities." *Id.* at *6.

Without addressing *Alexander* and other persuasive authority cited by the *Alexander* court,[2] plaintiff then insists that denying a detainee access to a toilet for more than 17 hours is per se unlawful under *Palmer v. Johnson*. Doc. 113 at 5, 7. However, the facts of *Palmer* are clearly distinguishable from the facts of this case. In *Palmer*, a detainee was confined to an open field in the cold along with 48 others for 17 hours and forced to urinate and defecate in the field with the other inmates. *Palmer v. Johnson*, 193 F.3d 346, 349 (5th Cir. 1999). The Fifth Circuit held that this "complete deprivation of toilets for scores of inmates confined in the same small area" amounted to a "deprivation of basic elements of hygiene." *Id.* at 352. Plaintiff, in contrast, was in an indoor cell by himself. Furthermore, unlike the detainee in Palmer, plaintiff had access to a means to relieve himself. Given these differences, *Palmer* does not require this court to hold that plaintiff's confinement in the violent cell deprived him of life's minimal necessities.

In sum, the court concurs with the magistrate judge's finding that plaintiff was subjected to mere *de minimis* impositions that did not deprive him of life's minimal necessities. Accordingly, the court holds that plaintiff's confinement in Henderson County's violent cell did not violate his constitutional rights.

Further, because that confinement did not violate plaintiff's rights, the court agrees with the magistrate judge's conclusion that qualified immunity shields the defendants on any claims relating to plaintiff's confinement in the violent cell. *See Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016).

### D.  Bystander liability

Plaintiff also objects to the magistrate judge's failure to address claims of bystander liability against the central officer defendants. Doc. 112 at 14. There is no basis for bystander liability

---

[2] *See, e.g.*, *Chapman v. Proctor*, No. 2:20-cv-00091, 2022 WL 822466, at *1 (S.D. Ga. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 501390 (S.D. Ga. Feb. 18, 2022); *Williamson v. Larpenter*, No. cv 19-254, 2019 WL 3719761, at *1 (E.D. La. July 15, 2019), *report and recommendation adopted*, 2019 WL 3718135 (E.D. La. Aug. 7, 2019).

if there is no constitutional violation in the first place. *See Joesph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020) (noting that bystander liability claims require that an officer "knew a fellow officer was *violating* an individual's constitutional rights" and "was present at the scene of the constitutional *violation*" (emphasis added)). Because the defendants did not violate plaintiff's constitutional rights in the violent cell, the court overrules plaintiff's objections and dismisses any remaining claims of bystander liability.

### III. Conclusion

Having reviewed the magistrate judge's report de novo and being satisfied that it contains no error, the court overrules the parties' objections and accepts the report's findings and recommendation. Defendants' motion for summary judgment on qualified immunity (Doc. 75) is granted in part and denied in part. Defendants' motion for summary judgment is denied as to plaintiff's claim against defendant Alsobrook for excessive use of force. The motion is granted as to claims against Mickey, Fain, Johnson, and Alsobrook for deprivation of basic human needs. Any remaining claim for bystander liability is dismissed. The motions associated with defendants' supplemental briefs (Docs. 99, 100) are terminated.

*So ordered by the court on September 26, 2024.*

J. CAMPBELL BARKER
United States District Judge